BRANCH (CURTIS v.). See Case No. 3,499.

## Case No. 1,808.
### BRANCH v. MACON & B. R. CO. et al.
[2 Woods, 385.][1]

Circuit Court, S. D. Georgia. May Term, 1875.

PRINCIPAL AND SURETY — RIGHTS OF SURETY IN SECURITIES GIVEN TO SURETY — RAILROAD COMPANIES — MUNICIPAL AID — STATES — ACTIONS AGAINST—FEDERAL COURTS — FOLLOWING STATE DECISION.

1. A security, given by way of indemnity to a surety, may be reached and applied directly to the payment of the debt, on the application of the creditor, and the surety cannot prevent such application.

2. A state indorsed the bonds of a railroad company, upon the express condition that such indorsement should vest in the state the title of all property purchased with the proceeds of said bonds, and should give the state a first lien on all the property of the company; and that upon failure of the company to pay the interest or principal of the bonds, the governor should take possession of all its property and sell the same for the purpose of paying said bonds. Default was made by the railroad company in the payment of interest, and the governor took possession of its property, which he advertised for sale: Held, that at the suit of a holder of bonds of a subsequent issue, which the state had indorsed on the same terms as the first issue, but which indorsement the legislature had declared not binding on the state, the court would not restrain the sale of the road by the governor, nor take the possession thereof from the state, nor appoint a receiver therefor.

[Cited in Cunningham v. Macon & Brunswick R. Co., Case No. 3,483.]

[See Young v. Montgomery & E. R. R. Co., Case No. 18,166.]

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

3. The relief asked in such a case could not be granted without adjudicating the rights of the state, which ought not to be done unless the state were a party, and the state could not be made a party.

4. Where a question decided by a state supreme court is one of general jurisprudence, not depending upon any special statutory law of the state, the United States courts sitting in the state are, as courts of co-ordinate jurisdiction with the state court, not absolutely bound by such decision, but will give it such weight as the respect due the learned court which made the decision would properly require.

[In equity. Bill by John P. Branch against the Macon & Brunswick Railroad Company to foreclose a mortgage.] Heard on motion for preliminary injunction and for the appointment of a receiver. [Motion denied.]

By an act of the legislature of Georgia, passed December 30, 1866, the governor of the state was authorized to place the indorsement of the state upon the bonds of the Macon & Brunswick Railroad Company to the amount of ten thousand dollars per mile, for as many miles of railroad as might be completed, provided the road was free from liens or mortgages to endanger the securities of the state, and upon the express condition and understanding that such indorsement should vest the title of all property purchased with said bonds in the state until the bonds should be paid, and should operate as a prior lien or mortgage on all the property of the company; and on failure of the company to pay interest or principal when due, it was made the duty of the governor, upon information being given, to seize and take possession of all the property of the company, and apply the earnings of the road to the extinguishment of the bonds or coupons, and to sell the road and its equipments and property in such manner and at such time as in his judgment might best subserve the interest of all concerned. The amount of bonds authorized by this act was issued and indorsed by the governor in accordance with the act, amounting to $1,950,000. In 1868, the people of the state adopted a constitution, by which it was, among other things, provided, that the credit of the state should not be granted or loaned to aid any company, without a provision that the whole property of the company should be bound for the security of the state, prior to any other debt or lien, except to laborers, nor to any company in which there was not already an equal amount invested by private persons. On the 27th of October, 1870, the legislature passed an act amending the act of December 3, 1866, before recited, so as to authorize the governor to place the indorsement of the state to the extent of three thousand dollars per mile, upon the bonds of said company, in addition to the ten thousand first authorized. Under the latter act, the company issued and the governor indorsed bonds, to the amount of $600,000.

On the 14th of August, 1872, the legislature,

by resolution, declared the state's guaranty placed on the bonds of the said company, binding on the state. Afterwards the complainant became the purchaser and owner of a number of bonds of the last issue of $600,000. Interest not being paid on the bonds, the governor of the state, in July, 1873, seized and took possession of the railroad of the company on behalf of the state, and appointed a superintendent to conduct its operations, and the state, by its agents appointed by the governor, remained in possession thereof up to the time of hearing the motion; the defendant, Edward A. Flewellen, was the agent or receiver having the management thereof. On the 6th of March, 1875, the legislature passed a resolution, declaring the first issue of bonds valid and binding on the state, but the second issue, of $600,000, unconstitutional, null and void, and also declaring that the governor ought to sell the road, property and franchises of the company as early as practicable, upon such terms and for such price in money or first mortgage indorsed bonds of the said company, or bonds of the state, as, in his judgment, might be consistent with the interests of the state. Accordingly the governor, on the 5th day of April, 1875, issued his order directing the said Flewellen to advertise the sale of the road and property of the company, at auction, in the city of Macon, on the first Tuesday of June, 1875, upon the terms mentioned in the last resolution, and the said Flewellen advertised the same accordingly.

W. H. Hull, G. T. Barnes and J. B. Cumming, for complainant.

L. E. Bleckley, A. W. Hammond and N. J. Hammond, for defendants.

Before BRADLEY, Circuit Justice, and ERSKINE, District Judge.

BRADLEY, Circuit Justice. The complainant has filed the present bill, in which he prays for an injunction to prevent the said sale, and the appointment of a receiver to take possession of and sell the said road and property, under the direction of this court. The ground of the application is the apprehension that, in accordance with the legislative resolution of March 6, 1875, the second issue of bonds is to be repudiated, and that no part of the proceeds of said railroad will be appropriated to the sale of his bonds. The ground on which the complainant claims a right to have the railroad and other property of the company seized and applied to the payment, as well of the second issue of bonds as of the first, is the well known principle of equity, that a security given by way of indemnity to a surety may be reached and applied directly to the payment of the debt, and the surety cannot prevent such application. In other words, that the creditors will, in equity, be subrogated to the rights of the surety in reference to the security by which the debtor has indemnified him. The great

difficulty in this case arises from the fact that the surety is the state of Georgia, and that the said state is, by its agents and officers, in possession of the property given by way of indemnity. In order to effect the objects of this bill, the state must not only be displaced and the bondholders subrogated in its stead in reference to the property in question, but the courts must dispossess the state of the actual possession of that property. Of course this court has only co-ordinate jurisdiction with the state courts in this matter, and can only do what the state courts themselves could do in the exercise of general equity jurisdiction. The supreme court of this state has recently held, in the case of Printup v. Cherokee R. Co., 45 Ga. 365, that the courts of this state have no power to take a railroad out of the possession of the state. As the question is one of general consideration, not depending upon any special statutory law of the state of Georgia, this court as a court of equal and co-ordinate jurisdiction, would not feel absolutely bound by that decision, but would only give it such regard as the respect due to the learned court which made it would properly require. We are of opinion, however, that the decision has many considerations of weight in its favor. While it is true that in the cases of Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 738, and Davis v. Gray, 16 Wall. [83 U. S.] 232, the supreme court of the United States sustained suits against state officers for the recovery or protection of property belonging to the complainants or their trustees, in which the state had no interest or right, and the pretensions of the agents, in behalf of the states, were unconstitutional and void, we think no case can be found in which any court has assumed jurisdiction to interfere with property in the possession of the state, and admitted to have come rightfully into its possession. In this case, the railroad in question is as much in possession of the state itself as is the state house, or any other property belonging to it. And then the title, by which the complainants seek to have this court take possession of the property and wrest it out of the hands of the state, is one which admits the title of the state, and is, in truth, none other than that of the state itself, to which the complainant seeks to be subrogated.

The court is asked to make a decree, operating directly upon the rights of the state, and transferring them to the complainant and the other bondholders. It is not merely the possession of its agents, but the actual right and title of the state itself, which are sought to be affected and transferred. We think this cannot be done without making the state a party to the suit, which cannot be done. The state has provided a security for its own indemnity, to be managed in its own way, by its own officers and agents. Can such a security be taken out of its hands, at the instance of the creditors ulti-

mately to be benefited? . Can the state be charged as trustee for those creditors, and compelled to give up the trust fund, by a court which has no jurisdiction over it? It seems to us that the difficulties of the case are insurmountable. Again, the state evidently intends to question the validity of the bonds of the second issue, and, if liable only for the first issue, is interested in having the indemnity fund applied to the satisfaction of that issue. To sustain the complainant's case, the court would be compelled to decide upon the state's liability on its guaranty of the second issue of bonds, without having it as a party before it, and, if satisfied of such liability, would have to decide to that effect, because the complainant and his co-bondholders have no claim against the railroad except through the equities arising from a valid guaranty of their bonds by the state. The court is called upon, therefore, to adjudicate directly upon the state's liability on the guaranty, without having any jurisdiction over it, as a party, and having decided in favor of that liability, it is then called upon to dispose of the fund which the state has taken for its indemnity. The case, therefore, involves a direct adjudication of the rights and liabilities of the state, and an ultimate execution of property in its possession, the state, at the same time, denying its liability and insisting upon its right to maintain its lawfully acquired possession. It seems to us that this is asking the court to go further than any court has ever yet gone, except where legislation has been adopted, authorizing the state to be sued in the same manner as a private party. At all events the right of the complainant is, to our view, so doubtful that we do not feel authorized to exercise the extraordinary powers of this court sought to be put into operation. Without attempting, therefore, to point out to the complainant what other remedy he has, except to rely upon the good faith of the state of Georgia, we feel compelled to deny the motion for an injunction and the appointment of a receiver.